## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

|  |  |
|---|---|
| ——————————————— x | Civil Action No.: |
| BARBARA COOPER, : | |
| : | |
| Plaintiff, : | |
| vs. : | **COMPLAINT AND DEMAND FOR** |
| : | **JURY TRIAL** |
| MILLIMAN, INC., : | |
| : | |
| : | |
| Defendant. : | |
| ——————————————— x | |

Plaintiff, Barbara Cooper ("Plaintiff" or "Ms. Cooper") brings this Complaint and Demand for Jury Trial ("Complaint") against Milliman, Inc. ("Milliman" or "Defendant"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

2.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3.     Defendant purposefully avails itself of the protections of Florida law by regularly transacting business within the state and directing business at the state. Therefore, personal jurisdiction is established.

## PARTIES

4.     Plaintiff, Barbara Cooper, is a natural person who resides in Bonita Springs, Florida, within the confines of Lee County.

5.     Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6.     Defendant regularly conducts business in this District. Defendant regularly engages in the business of assembling and evaluating consumer information for the purposes of selling consumer reports to third parties. Therefore, Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

7.     Defendant maintains a principal place of business located at 1401 5th Avenue, Suite 3800, Seattle, Washington 98101. Defendant may be served through its registered agent, c/o United Agent Group Inc. located at 707 W. Main Avenue, #B1, Spokane, Washington, 99201.

8.     At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, , successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

9.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

10.     Plaintiff has been on Medicare A & B for quite some time, and after her husband had costly surgery earlier in 2022, Plaintiff desired additional coverage.

11.     In or around October 2022, Plaintiff applied for Medicare Plan G with Continental Life Insurance Company of Brentwood, Tennessee, an Aetna company ("Aetna").

12.     Plaintiff applied for Medicare Plan G using a licensed insurance agent, Oscar Acuna ("Mr. Acuna").

13.     As a part of the application process, Plaintiff authorized the release of her medical records and consented to a prescription/medical history check.

14.     Upon information and belief, Aetna purchased Plaintiff's prescription and medical history consumer report ("consumer report") from Defendant on or about October 16, 2022.

15.     On or about October 17, 2022, Aetna sent Plaintiff an Adverse Action Notice ("AAN") by mail.

16.     Plaintiff received the AAN a few days later, in or around late October 2022.

17.    The AAN stated that Plaintiff's application was "declined based on [her] prescription and/or medical history" and further that "[t]he information on [her] consumer report containing prescription and/or medical history was the basis for the decline decision."

18.    Specifically, the AAN cited to the following medical conditions "Diagnosis of Chronic Kidney Disease, Diagnosis of Kidney Disease, Diagnosis of Congestive Heart Failure, [and] Treatment for irregular heartbeat," hereinafter referred to as "the Disputed Diagnoses."

19.    The AAN also indicated that the consumer report concerning Plaintiff's prescription and/or medical history was generated by Milliman IntelliScript.

20.    Plaintiff was shocked as she has never been diagnosed with the Disputed Diagnoses, is in reasonably good health, and knew of no reason that she would be denied life insurance.

21.    The same day that Plaintiff received the AAN, in or around late October 2022, Plaintiff called Aetna.

22.    Aetna informed Plaintiff that she would need to speak to Defendant.

23.    On or about October 20, 2022, Plaintiff requested a copy of her consumer report from Defendant.

24.    On October 20, 2022, Defendant emailed Plaintiff confirming receipt of her request.

4

25.    On October 24, 2022, Defendant emailed Plaintiff a copy of her Milliman IntelliScript report.

26.    The prescription history section of Plaintiff's Milliman report included approximately three hundred and seventy different medications that Plaintiff was allegedly prescribed.

27.    The prescription history was inaccurate because it included more than three hundred and sixty different medications that Plaintiff has never been prescribed or taken.

28.    The prescription history physician address section of Plaintiff's Milliman report included twenty-four physicians that allegedly prescribed Plaintiff medication.

29.    The prescription history physician address section was inaccurate because it included more than twenty different physicians who Plaintiff never sought treatment with nor who prescribed Plaintiff medications.

30.    The prescription history pharmacy address section of Plaintiff's Milliman report included six pharmacies that Plaintiff allegedly used for her prescriptions.

31.    The prescription history pharmacy address section was inaccurate because it included four pharmacies that Plaintiff has never used for her prescriptions.

32.    The medical history section of Plaintiff's Milliman report included more than nine hundred entries concerning medical care, conditions, treatment, diagnoses, etc.

33.    The medical history section was inaccurate because it included more than eight hundred and fifty entries for medical care, conditions, treatment, diagnoses, etc. that Plaintiff has never received and for conditions that Plaintiff has never had.

34.    Therefore, the information Defendant reported about Plaintiff is patently inaccurate.

35.    Upon review, Plaintiff was shocked and frightened given that there were **more than one thousand** total entries on her consumer report that did **not** belong to her.

36.    Plaintiff immediately began to fear that her identity was stolen because she knew that medical and prescription records were all associated by social security number.

37.    Thereafter, Plaintiff called Defendant to dispute.

38.    Plaintiff called Defendant several times and left voicemails.

39.    Meanwhile, on or about October 24, 2022, Defendant emailed Plaintiff to inform her that it received her message indicating that her report may be inaccurate.

40.    Defendant listed for Plaintiff the steps it deemed necessary to process an inaccurate reporting dispute, which included "suggestions" that Plaintiff request copies of her records from all of the pharmacies and providers/facilities that Plaintiff is indicating that she has never been to.

41.    Plaintiff was furious and beyond frustrated. She did not understand why the burden was on her when Defendant was the one who made the mistake.

42.    Finally, on or about October 26, 2022, Plaintiff was able to speak to Defendant by phone.

43.    Plaintiff disputed the inaccurate reporting with Defendant on October 26, 2022.

44.    During the call, Plaintiff informed Defendant that there were hundreds of inaccuracies in her consumer report.

45.    Defendant again informed Plaintiff that she would need to call the doctors that she has alleged are not hers and get a letter from each of the doctors indicating that she did not receive treatment there.

46.    On October 26, 2022, Defendant emailed Plaintiff to confirm the phone call.

47.    Specifically, Defendant asked that Plaintiff reply "yes" to confirm she was disputing all but approximately forty of the entries on her consumer report.

48.    On October 26, 2022, Plaintiff responded to Defendant's email and confirmed that she was disputing all but approximately forty of the entries on her consumer report.

49.    In or around late October or early November 2022, Plaintiff called one of the CVS Pharmacy locations that was listed most often on her consumer report.

50.    During the call with the Warner Robins CVS Pharmacy ("CVS"), Plaintiff asked if it had a Barbara Cooper in its records.

51.    Plaintiff was informed that there was a Barbara Cooper in CVS's records.

52.    However, CVS confirmed that additional personal identifiers, such as address, did not match Plaintiff.

53.    Upon information and belief, Defendant matched various medical and prescription records to Plaintiff using only her first name and last name, and not any other personal identifiers.

54.    Upon information and belief, Plaintiff and the other Barbara Cooper do not have the same middle name.

55.    Upon information and belief, the other Barbara Cooper lives in Georgia.

56.    Plaintiff has lived in Florida since 2000.

57.    Plaintiff has not lived in Georgia since 2000.

58.    Plaintiff has also never lived in nor received medical treatment in a number of the states Defendant indicated the physicians  that allegedly treated Plaintiff  were located, including but not limited to: Ohio, Tennessee, New Hampshire, Virginia, Mississippi, Missouri, and North Carolina.

59.    On November 2, 2022, Defendant emailed Plaintiff and stated that Defendant started the investigation and "found that most of the items [Plaintiff was] disputing can be removed."

60.    Defendant also asked Plaintiff to confirm whether eight specific entries were hers.

61.    On November 10, 2022, Plaintiff responded to Defendant informing it that only a couple of the listed records were hers and that Defendant must not be matching the records to her using her complete name, date of birth, insurance information, and social security number.

62.    On or about November 10, 2022, Defendant called Plaintiff.

63.    Upon information and belief, Defendant informed Plaintiff that it had revised her report.

64.    On November 22, 2022, Plaintiff received a dispute response and an allegedly corrected consumer report.

65.     Specifically, Defendant stated that "[b]ased on your inquiry and the information you provided, we believe that several of the items were reported in error."

66.     The attached report revealed that Defendant deleted more than one thousand entries from Plaintiff's consumer report.

67.     On or about December 5, 2022, Plaintiff resubmitted her application to Aetna.

68.     Plaintiff was hopeful she would be approved now that Defendant issued a corrected report.

69.     Upon information and belief, on or about December 5, 2022, Aetna purchased a second report concerning Plaintiff from Defendant.

70.     Upon information and belief, Defendant sold a consumer report to Aetna concerning Plaintiff on or about December 5, 2022.

71.     On or about December 5, 2022, Aetna's automated software analyzed Plaintiff's second Milliman consumer report and again determined Plaintiff did not qualify for insurance through Aetna. Accordingly, Plaintiff's application was auto declined.

72.     However, fortunately for Plaintiff, the Aetna underwriting team noticed something was off.

73.    Aetna reviewed Plaintiff's second report and the denial reason(s) and compared that with the previously corrected Milliman report.

74.    Aetna determined that Plaintiff's second Milliman report contained erroneous information.

75.    Specifically, the second denial was based on "Medication- Flecainide Acetate/ Prescribed by Dr. Wiggins."

76.    Defendant had previously removed more than thirty entries related to "Flecainide Acetate" and/or Dr. Wiggins from Plaintiff's consumer report.

77.    Fortunately, after noticing Defendant's error, the Aetna underwriter was able to manually override the auto denial based on Defendant's inaccurate reporting and approved Plaintiff's application.

78.    This confirmed what Plaintiff already knew—that the inaccurate information reported by Defendant was the *sole* basis for Plaintiff's being denied insurance.

79.    On or about December 29, 2022, Plaintiff requested a copy of her second Milliman consumer report.

80.    Plaintiff wanted to ensure that Defendant had not re-inserted any other inaccurate records.

81.    On or about January 3, 2022, Plaintiff received a copy of her second Milliman consumer report.

11

82.     The second Milliman consumer report was dated December 5, 2022.

83.     Upon review, Plaintiff was more than frustrated. She observed multiple prescription records and physician records that Milliman had already confirmed did not belong to her.

84.     Specifically, Defendant reported the following prescriptions:

(i)     Dorzolamide HCI Ophth Soln 2% (Marlene Catarino);

(ii)    Furosemide Tab 40 MG (Collin Cherry);

(iii)   Flecainide Acetate Tab 100 MG (Newton Wiggins);

(iv)    Allopurinol Tab 300 MG (Jack McCallie);

(v)     Amlodipine Besylate Tab 2.5 MG (Base Equivalent) (Jack McCallie);

(vi)    Hydralazine HCI Tab 50 MG (Jack McCallie);

(vii)   Metoprolol Tartrate Tab 50 MG (Jack McCallie);

(viii)  Pantoprazole Sodium EC Tab 40 MG (Base Equivalent) (Jack McCallie); and

(ix)    COVID-19 mRNA Bivalent Vaccine- Moderna IM Susp 50 MCG/0.5ML (Umesh Narsinghani).

85.     Defendant also reported the following physicians:

(i)     Marlene Catarino in Oglethorpe, GA;

(ii)    Collin Cherry in Chattanooga, TN;

(iii)   Jack McCallie in Chattanooga, TN;

(iv)   Umesh Narsinghani in Macon, GA; and

(v)    Newton Wiggins in Chattanooga, TN.

86.    Upon information and belief, Defendant failed to "unmix" Plaintiff's file after deleting more than one thousand entries from Plaintiff's consumer report/file.

87.    In the alternative, upon information and belief, Defendant "re-mixed" Plaintiff's file after deleting more than one thousand entries from Plaintiff's consumer report/file.

88.    Accordingly, Defendant re-inserted various prescription records and physician records into Plaintiff's consumer report/file.

89.    Although ultimately approved for insurance with Aetna, Plaintiff suffered significant harm as will be discussed in greater detail below.

90.    Upon information and belief, Defendant erroneously associated or "mixed" Plaintiff's consumer file with at least one other person's consumer file.

91.    Upon information and belief, Defendant matched the medical, prescription, and provider records to Plaintiff using only her first name and last name.

92.    "Barbara," "Cooper" and "Barbara Cooper" are very common names.

93.     As demonstrated by the above allegations, Defendant fails to maintain, employ, and/or follow reasonable procedures to assure maximum possible accuracy of the information it includes in consumer reports.

94.     As demonstrated by the above allegations, Defendant knowingly and willfully maintains deficient procedures because reporting more information – even if it may be inaccurate– is more profitable than reporting less information.

95.     For example, Defendant "mixed" Plaintiff's file and allowed at least one other consumer's medical, prescription, and provider records to appear on Plaintiff's consumer reports without matching her full name, date of birth, social security number, driver's license number, insurance information, or address.

96.     In fact, Defendant matched the medical, prescription, and provider records to Plaintiff using only her first name and last name.

97.     In November 2021, the Consumer Financial Protection Bureau issued an advisory opinion to highlight that a consumer reporting agency that uses matching procedures that includes "name-only matching" is not using reasonable procedures to assure maximum possible accuracy.

98.     Defendant knew or should have known that it had "mixed" Plaintiff's credit file with another consumer because medical, prescription, and provider records are, at a minimum, associated with consumers' names, birthdays, social security numbers, and addresses.

14

99.    Further, Plaintiff provided Defendant with her full name, address, date of birth, and social security number with her application.

100.    At the time it compiled and sold Plaintiff's consumer report to Aetna, Defendant already knew that its loose matching algorithms had previously and frequently mixed consumer information with that of other consumers.

101.    Defendant has been sued under the FCRA by consumers in the past for inaccurately reporting another consumers' information on their consumer reports.

102.    Thus, Defendant has notice that its business practices and procedures, including loose matching algorithms, give rise to the "mixing" of consumer files, preparation of inaccurate consumer reports, and dissemination of inaccurate consumer information.

103.    Plaintiff is a victim of a "mixed file;" Defendant has "mixed" information in her file with that of a completely different person.

104.    Defendant's collection and reporting of information in Plaintiff's consumer report was exactly as Defendant intended it to be.

105.    Defendant's reporting about Plaintiff was willful because it was carried out in a reckless disregard for her rights as required by the Fair Credit Reporting Act.

106.    Despite having notice of its deficient procedures, Defendant has not significantly modified its procedures to assure that the consumer reports that it

prepares, publishes, and maintains are of maximum possible accuracy, as required by 15 U.S.C. § 1681e(b).

107.  Upon information and belief, Defendant has not, and does not intend to, meaningfully modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

108.  Accordingly, Defendant's violations of 15 U.S.C. § 1681e(b) were willful and causes it to be liable for punitive damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681n.

109.  Alternatively, Defendant's violations demonstrate Defendant's extreme negligence.

110.  Defendant's failure to meaningfully modify its procedures caused substantial harm to Plaintiff.

111.  Defendant's actions were in accordance with its intent, policies, and procedures.

112.  Defendant knows that its services are used to make significant consumer decisions.

113.  Upon information and belief, Defendant knew or should have known that the information it provides to potential insurers is used to determine whether a consumer's application for insurance is approved and/or whether the application is approved on favorable terms.

114.    Upon information and belief, Defendant knew or should have known that insurers make decisions regarding applications for insurance based solely on the information contained in its reports.

115.    Upon information and belief, Defendant knew or should have known the negative impact that hundreds of inaccurate medical, prescription, and provider records were likely to have on a consumer's insurance application.

116.    At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

117.    The FCRA was specifically designed to address the very type of harm that Plaintiff suffered in this case.

118.    As a direct result of Defendant's inaccurate reporting, Plaintiff has suffered injuries that resulted in actual damages including, but not limited to: insurance denial, wasted time, fear of identity theft, sleepless nights, invasion of privacy, emotional distress, including mental anguish, stress, anxiety, frustration, humiliation, embarrassment, and other damages continuing in nature.

119.    As a direct result of Defendant's conduct, Plaintiff was denied insurance with Aetna twice.

120.    Although ultimately approved for insurance with Aetna, Defendant's conduct delayed Plaintiff's approval, and Plaintiff was only approved after Aetna

noticed Defendant erroneously re-inserted information it had previously deleted from Plaintiff's file.

121.   Plaintiff also reasonably believes that had Mr. Acuna not been in contact with the Aetna underwriters, that Aetna would not have inquired into Plaintiff's second denial/Milliman report and failed to recognize the second denial was based on previously deleted information.

122.   As a direct result of Defendant's conduct, Plaintiff feared that her identity was stolen.

123.   Defendant's conduct also caused Plaintiff to waste a significant amount of time disputing with Defendant, communicating with Aetna and her insurance agent, and conducting her own research concerning the inaccurate records.

124.   As a direct result of Defendant's conduct, Plaintiff feared that she would be unable to get approved for insurance.

125.   Defendant's conduct caused Plaintiff to suffer from anxiety, stress, frustration, annoyance, and other emotional distress.

126.   Consequently, Plaintiff had difficulty sleeping and suffered from sleepless nights.

127.   Defendant's conduct also caused Plaintiff to suffer from humiliation and embarrassment.

128.   Specifically, Plaintiff was embarrassed and humiliated to be associated with the inaccurate medical and prescription records.

## <u>COUNT I</u>
## **Defendant's Violations of 15 U.S.C. § 1681e(b)**

129.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

130.   The FCRA requires consumer reporting agencies, like Defendant, to maintain reasonable procedures to ensure they compile and disburse consumer credit information with maximum possible accuracy. 15 U.S.C. § 1681e(b).

131.   Defendant violated 15 U.S.C. § 1681e(b) by failing to establish, maintain, and/or follow reasonable procedures to assure maximum possible accuracy in the preparation and maintenance of Plaintiff's consumer report(s) and consumer file.

132.   Specifically, Defendant failed to establish, maintain and/or follow reasonable procedures to prevent it from inaccurately reporting at least one other consumer's prescription and medical records on Plaintiff's consumer reports and/or file.

133.   As a result of Defendant's conduct, action, and inaction, Plaintiff suffered from harm as further described herein.

134.   Defendant's violations of the FCRA were both willful and knowing. Therefore, Defendant is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

135.   Alternatively, Defendant's violations of the FCRA were negligent. Therefore, Defendant is liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

136.   In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### Defendant's Violations of 15 U.S.C. § 1681i

137.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

138.   The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id.*

139.   The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

140.   15 U.S.C. § 1681i(a)(5)(B)(i) mandates that information that was previously deleted from a consumer's file pursuant to subparagraph (A) "may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate."

141.   Further, pursuant to 15 U.S.C. § 1681i(a)(5)(B)(ii), if any information that has previously been deleted from a consumer's file is reinserted into the file, a consumer reporting agency must "notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any other means available to the agency."

142.   The FCRA also requires that consumer reporting agencies, like Defendant, "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph." 15 U.S.C. § 1681i(a)(5)(C).

143.   On at least one occasion during 2022, Plaintiff disputed the inaccurate information with Defendant and requested that it delete hundreds of entries in her consumer report that did not belong to her.

144.   In response to Plaintiff's dispute, in or around November 2022, Defendant deleted more than one thousand entries from Plaintiff's consumer report.

145.   Sometime thereafter, Defendant re-inserted at least nine prescriptions associated with at least five different physicians into Plaintiff's consumer report/file.

146.    Defendant violated 15 U.S.C. § 1681i by reinserting information that it previously deleted from Plaintiff's consumer report/file pursuant to 15 U.S.C. § 1681i(A), failing to notify Plaintiff within five days of the reinsertion, and failing to maintain reasonable procedures to prevent the information's reappearance in Plaintiff's consumer report(s)/file.

147.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered from harm as further described herein.

148.    Defendant's violations of the FCRA were both willful and knowing. Therefore, Defendant is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. §§ 1681n, 1681o.

149.    Alternatively, Defendant's violations of the FCRA were negligent. Therefore, Defendant is liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

150.    In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

**<u>TRIAL BY JURY</u>**

151.    Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

22

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Barbara Cooper, respectfully requests judgment be entered against Defendant, for the following:

A.    Actual damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

B.    Statutory damages pursuant to 15 U.S.C. §§ 1681n, 1681o;

C.    Punitive damages pursuant to 15 U.S.C. § 1681n;

D.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, 1681o;

F.    Any pre-judgment and post-judgment interest as may be allowed under the law; and

G.    Other and further relief as the Court may deem just and proper.

Date: January 13, 2023,           **SFT LEGAL SERVICES P.A.**

                                      **OF COUNSEL FOR**
                                      **THE CONSUMER JUSTICE LAW FIRM**

                                      */s/ Yosef Steinmetz*
                                      Yosef Steinmetz, Bar No. 119968
                                      4014 Chase Avenue, Suite 220
                                      Miami Beach, FL 33140
                                      T: (786) 368-5617
                                      E: ysteinmetz@cjl.law
                                      yosef@sftlegal.net

                                      *Attorney for Plaintiff*
                                      Barbara Cooper