UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARBARA COOPER,

      Plaintiff,

v.                    Case No:  2:23-cv-00028-JES-NPM

MILLIMAN, INC.,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Barbara Cooper's Motion to Exclude Opinion Evidence From Rebecca Kuehn (Doc. #83) filed on November 22, 2024. Milliman, Inc.'s Opposition to Plaintiff's Motion to Exclude and Request to Strike and Award Sanctions (Doc. #87) was filed on December 13, 2024.[1] For the reasons set forth below, the motion is granted in part and denied in part.

### I.

The Court recently summarized this Fair Credit Reporting Act (FCRA) case in an Opinion and Order on cross-motions for summary

---

[1] Defendant's Opposition contains an embedded request to strike the motion and award sanctions for filing what it describes as a "baseless" motion without a Local Rule 3.01(g) Certification. This request is itself a motion, Fed. R. Civ. P. 7(b)(1), for which there is no Rule 3.01(g) certificate.  In any event, the Court does not find the motion to be baseless, and therefore declines to either strike the motion or award sanctions.

judgment:

> In October 2022, Cooper applied for insurance with a non-party insurance company (the Insurer). As part of its evaluation process, the Insurer requested a consumer report from Milliman. Milliman, whom the parties agree is a Consumer Reporting Agency pursuant to the FCRA, was furnished with Plaintiff's prescription and medical history by Anthem, a non-party data furnisher. Milliman compiled the report and sent it the Insurer. The Insurer then denied Plaintiff's application based on her "prescription and/or medical history."

> Plaintiff obtained a copy of the report from Milliman and disputed its accuracy. Among other errors, the report showed Plaintiff was prescribed flecainide acetate by Dr. Newton Wiggins and multiple fillings of that prescription by Plaintiff. As it turned out, this erroneous information attributed to Plaintiff actually concerned another person with the same first name, last name, and date of birth as Plaintiff. Milliman removed the inaccurate information within thirty days and applied its internal blocking protocol to prevent the removed information from reappearing in future reports.

> Plaintiff reapplied and the cycle began anew. The Insurer requested a new report from Milliman. Milliman was furnished with Plaintiff's prescription and medical history by Anthem, compiled a report, and sent it the Insurer. The Insurer then auto-declined Plaintiff's application because the report still showed Plaintiff had received a flecainide acetate prescription by Dr. Wiggins. However, the Insurer was able to compare the new report with the old-but-revised report and determine the flecainide acetate prescription by Dr. Wiggins did not actually relate to Plaintiff. The Insurer then overturned the auto-decline and approved Plaintiff's application. This lawsuit followed.

(Doc. #101, pp. 3-5)(internal citation and footnote omitted.) The Court also adopts its discussion of the legal requirements of the FCRA set forth in that Opinion and Order.

- 2 -

## II.

Two primary questions to be resolved by the jury are whether Milliman's procedures to assure maximum possible accuracy were reasonable or unreasonable, and whether its procedures to prevent the reinsertion of inaccurate information in a report were reasonable or unreasonable. Cooper has identified her expert on these issues as Evan Henricks (Henricks). Milliman has identified attorney Rebecca Kuehn (Kuehn) as its expert to rebut Henricks' opinions. Kuehn's expert report states she will offer the following opinions:

> A. Milliman's Process for Matching Consumer Records is Consistent with Industry Practice and Otherwise Reasonable.
>
> B. Milliman's Procedure for Blocking Information that was Previously Removed from a Consumer Report is Consistent with Industry Practice and Reasonable.

(Doc. #79-6, pp. 15, 17.)

Plaintiff argues that Kuehn in unqualified and her proffered testimony unreliable because she: (1) has no experience or training in assuring FCRA compliance for procedures concerning the reporting or reinvestigation of consumer medical information; (2) has no knowledge about how identity matching works or about the software Milliman used to prevent the reinsertion of inaccurate information in the second report; (3) has no direct experience with Milliman's practices and procedures and relies heavily or exclusively on hearsay statements made by Milliman's

- 3 -

corporate representative (Joel Strassburg); and (4) never identifies any industry standards. "As such," Plaintiff contends, "her opinions are nothing more than bare legal conclusions that are pasted on to Milliman's factual theories." (Doc. #83, p. 24.) Milliman disagrees with each argument.

## III.

Admission of expert opinion evidence is governed by Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), the Supreme Court held that the trial court has a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. The importance of this gatekeeping

function "cannot be overstated." _United States v. Frazier_, 387 F.3d 1244, 1260 (11th Cir. 2004)(en banc).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. _Frazier_, 387 F.3d at 1260. A district court determines the admissibility of expert testimony by considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in _Daubert_; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

_Knepfle v. J-Tech Corp._, 48 F.4th 1282, 1294 (11th Cir. 2022)(quoting _City of Tuscaloosa v. Harcros Chems., Inc._, 158 F.3d 548, 562 (11th Cir. 1998)).  In short, "the expert must be qualified; his methodology must be reliable; and his testimony must be helpful to the trier of fact." _Doe v. Rollins Coll._, 77 F.4th 1340, 1347 (11th Cir. 2023). "[T]he party seeking to introduce the expert at trial bears the burden of establishing his qualifications, reliability, and helpfulness." _Knepfle_, 48 F.4th at 1294 (citing _Frazier_, 387 F.3d at 1260).

"Even expert testimony which satisfies these three requirements, however, may nonetheless be excluded under Rule 403 if the probative value of the expert testimony is substantially

outweighed by its potential to confuse or mislead the jury, or if it is cumulative or needlessly time consuming." Frazier, 387 F.3d at 1263. In the final analysis, the admission of expert testimony is a matter within the discretion of the trial court. Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1103 (11th Cir. 2005); Frazier, 387 F.3d at 1258.

The gatekeeper function, however, does not provide the Court with an opportunity to substitutes its judgment for that of a jury as to the persuasiveness of the expert evidence. United States v. Barton, 909 F.3d 1323, 1332 (11th Cir. 2018). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," (Id.)(citation omitted).

The expert testimony anticipated in this case is not scientific. Nonetheless, "[t]he principles set out in Daubert apply to soft-science expert testimony. 'Social science testimony, like other expert testimony . . ., must be tested to be sure that the person possesses genuine expertise in a field and that her court testimony adheres to the same standards of intellectual rigor that are demanded in her professional work.'" Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1317–18 (11th Cir. 2022)(citations omitted).

> That said, "social science research, theories[,] and opinions cannot have the exactness of hard science methodologies," and peer review, publication, error rate, etc. are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert. Where "ideal experimental conditions and controls" are precluded, "other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations." Where appropriate, social science expert testimony can give the jury a view of the evidence well beyond their everyday experience.

Id. at 1318 (internal citations omitted).

## IV.

### A. Kuehn's Expert Qualifications

The first requirement is that the expert is qualified to testify on the subject matter. Milliman bears the burden of establishing by a preponderance of the evidence that Kuehn "is *qualified* as an expert," which means showing Kuehn "is the type of person who should be testifying on the matter at hand." Moore v. Intuitive Surgical, Inc., 995 F.3d 839, 852 (11th Cir. 2021). "[E]xpert status may be based on 'knowledge, skill, experience, training, or education.'" Frazier, 387 F.3d at 1261 (quoting Fed. R. Evid. 702). Because Kuehn is relying primarily on her experience, Milliman has the burden "to explain how that experience led to the conclusion [s]he reached, why that experience was a sufficient basis for the opinion, and just how

that experience was reliably applied to the facts of the case." Frazier, 387 F.3d at 1265. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." Carrizosa, 47 F.4th at 1323 (citation omitted).

Kuehn states she is "an expert in the policies, procedures, and practices that consumer reporting agencies ('CRAs') use to ensure compliance with the FCRA." (Doc. #79-6, p. 3.) She "developed this expertise through substantial experience in the industry advising CRAs, lenders, and other users of credit reports on the development of procedures designed to comply with the FCRA." (Id.) Her resume shows that Kuehn graduated near the top of her class at George Washington Law School. (Id. at p. 26.) She served five years at the Federal Trade Commission (FTC), "a federal agency tasked with the enforcement of the FCRA," (id. at p. 3), as an Assistant Director, where she was "[p]rimarily responsible for the [FCRA] program, leading the Commission's enforcement, policy, outreach, and rulemaking activities in that area." (Id. at p. 25.)

In that role, Kuehn "oversaw the development and issuance of the FTC staff report, 40 years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations," a report that "is relied upon by government and

industry as an authoritative source on the FCRA." (Id. at p. 4 n.5.) Since leaving that role in September 2011, Kuehn has advised employers and clients on the FCRA. (Id. at p. 25.) In addition, Kuehn has served as co-chair of the FCRA Litigation Subcommittee in the American Bar Association, (id. at p. 26), given numerous presentations on the FCRA, (id. at pp. 27-31), authored various publications on the FCRA, (id. at p. 23), and "testified before the U.S. House Committee on Financial Services . . . on behalf of the Consumer Data Industry Association, at a hearing on 'Consumer Credit Reporting: Assessing Accuracy and Compliance.'" (Id. at p. 6.)

Plaintiff's arguments against Kuehn's qualifications fail because they go towards the weight of Kuehn's proffered testimony, not its admissibility. For example, when Plaintiff argues that Kuehn is unqualified to opine on industry standards because of any lack of experience as to reporting of medical information, she essentially argues the FCRA requires specificity as to each area it applies. But the FCRA deals with CRAs in general and whether their procedures are reasonable. It requires *all* CRAs, regardless of industry, to follow or maintain reasonable procedures and nothing in the Act provides separate rules based on the type of information collected and reported. Same goes for Plaintiff's argument that Kuehn must have direct knowledge about Milliman's identity matching or software. See

<u>Carrizosa</u>, 47 F.4th at 1323 (explaining the bases and sources of an expert's opinion typically goes to weight of evidence).

Plaintiff's dispute as to Kuehn's interview with corporate representative Joel Strassburg and her reliance on that interview to form her opinions also falls short. In her report, Kuehn states she "became aware and gained an understanding of the facts" by "review[ing] and consider[ing]," (Doc. #79-6, p. 3 n.1), among other things, Plaintiff's deposition, Plaintiff's expert's deposition, documents produced by Plaintiff and Defendant, and her interview with corporate representative Joel Strassburg. (<u>Id.</u> at p. 21.) Kuehn clearly did not exclusively rely on Strassburg to gain an understanding of the facts. In any event, Plaintiff will have an opportunity to cross-examine and elicit an opinion from Kuehn based on Plaintiff's version of events. <u>See</u> <u>Travelers</u> <u>Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC</u>, 71 F.4th 894, 906 (11th Cir. 2023)("The ability to answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses.") (quoting <u>United States v. Henderson</u>, 409 F.3d 1293, 1300 (11th Cir. 2005))). The jury, as the ultimate factfinders, will then be free to accept whatever fact and disbelieve or believe whatever expert. Additionally, Kuehn is permitted to base her opinions on inadmissible hearsay pursuant to Fed. R. Evid. 703 because such underlying information is of the type reasonably relied upon by experts in forming opinions.    <u>United States v.</u>

Steed, 548 F.3d 961, 975 (11th Cir. 2008).  While this does not
open the door to all inadmissible evidence disguised as expert
opinion, Id., that concern may be handled with specific
objections at trial.

As Plaintiff herself admits, Kuehn has "impressive
credentials" at first sight. (Doc. #83, p. 22.) Even Plaintiff's
own expert has recognized Kuehn's FCRA qualifications. See
Jackson v. Equifax Info. Servs. LLC, No. 113CV02382MHCRGV, 2015
WL 13649449, at *6 n.17 (N.D. Ga. July 29, 2015)(acknowledging
that Kuehn's law firm is "one of the leading FCRA compliance law
firms.") Kuehn is qualified to testify concerning policies and
procedures relating to compliance with the FCRA.

**B. Reliability of Methodology**

The second requirement is that Kuehn's methodology is
sufficiently reliable.  As discussed earlier, the reliability of
non-scientific expert opinions depends heavily on the knowledge
and experience of the expert, not the exactness of the
methodology. Indicia of reliability under Daubert includes
professional experience, education, training, and observations.
Carrizosa, 47 F.4th at 1318. If an expert "is relying solely or
primarily on experience, then [she] must explain how that
experience leads to the conclusion reached, why that experience
is a sufficient basis for the opinion, and how that experience
is reliably applied to the facts." Id. at 1322.

- 11 -

Evidence of compliance or noncompliance with a custom within a particular industry, though not conclusive, is a factor the trier of fact may consider. <u>Carroll v. Carnival Corp.</u>, 955 F.3d 1260, 1269 (11th Cir. 2020); <u>Sorrels v. NCL (Bahamas) Ltd.</u>, 796 F.3d 1275, 1282 (11th Cir. 2015). Knowledge of such industry practices, procedures, and customs has been accepted as sufficiently reliable to allow qualification as an expert witness in a FCRA case. <u>See</u> <u>Williams v. First Advantage LNS Screening Sols. Inc</u>, 947 F.3d 735, 743 (11th Cir. 2020)(relating to Hendricks). Admissibility of an expert opinion, however, cannot "be established merely by the *ipse dixit*[2] of an admittedly qualified expert," <u>Frazier</u>, 387 F.3d at 1261. <u>See also</u> <u>United States v. Ahmed</u>, 73 F.4th 1363, 1382 (11th Cir. 2023). "[N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997).

The Court finds Kuehn possesses the required knowledge and experience to provide reliable testimony that is not merely *ipse dixit*. Kuehn has published numerous works on the FCRA. One publication was at the FTC, which can set guidance as to what

---

[2] "*Ipse dixit*" is Latin for "he himself said it." Black's Law Dictionary 833 (12th ed. 2024). The term is used to refer to "[s]omething asserted but not proved." <u>Id.</u>

procedures are or are not reasonable. See Pedro v. Equifax, Inc.,
868 F.3d 1275, 1280 (11th Cir. 2017). Her knowledge has been
tested at various presentations, in court, (Doc. #79-6, p. 6),
and before Congress. The application of her vast knowledge and
experience to the facts here is what makes her reliable. See
Brown v. Vivint Solar, Inc., 612 F. Supp. 3d 1337, 1344 (M.D.
Fla. 2020)(finding FCRA expert witness reliable because his
"testimony is based on his experience and research in FCRA
matters" and "his method is simply an application of his
experience with and understanding of the FCRA and the credit
reporting industry to the facts at hand." (quoting Valenzuela v.
Equifax Information Services LLC, 2015 WL 6811585, at *2 (D.
Ariz. Nov. 6, 2015)). Other arguments, like that Kuehn's opinion
is unreliable because of her lack of knowledge about identity
matching or Milliman's software and her excessive reliance on
information supplied by Milliman's corporate representative, as
discussed earlier, are unpersuasive because they go to the weight
of Kuehn's testimony, not its admissibility.

One of Cooper's arguments is persuasive though. Cooper
asserts that Kuehn opinions are simply statements of law, which
are improper:

> While it is well established that a qualified
> expert in a civil case may offer his opinion
> on an "ultimate issue" in a case, Fed. R.
> Evid. 704(a), experts "may not testify to the
> legal implications of conduct" or "tell the

jury what result to reach." Rather, "the court must be the jury's only source of law," and questions of law are not subject to expert testimony. Id. "[C]ourts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." Thus, the district court must take "adequate steps to protect against the danger that [an] expert's opinion would be accepted as a legal conclusion."

Commodores Entm't Corp. v. McClary, 879 F.3d 1114, 1128-29 (11th Cir. 2018)(citations omitted). Additionally, while a witness may testify concerning an ultimate issue of fact, the witness may not "tell the jury what result to reach." See Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990). "A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." Id.

Kuehn will be able to testify to compliance or non-compliance with industry customs and standards, but not whether Milliman's procedures were reasonable or unreasonable. The consensus in the Middle District of Florida is that an FCRA expert cannot testify whether procedures were "reasonable" or "unreasonable." Williams v. First Advantage LNS Screening Sols. Inc, No. 1:13CV222-MW/GRJ, 2015 WL 9690018, at *3 (N.D. Fla. Mar. 31, 2015)("To the extent Mr. Hendricks intends to testify on whether Defendant's methods, specifically, are "reasonable," such testimony is improper."); Malverty v. Equifax Info. Servs., LLC,

No. 8:17-CV-1617-T-27AEP, 2019 WL 5549146, at *3 (M.D. Fla. Oct.
28, 2019)(holding the expert may compare the party's procedures
to industry standard but "[h]e may not, however, testify about
whether Equifax's existing procedures or conduct were
unreasonable, reckless, inadequate, or offer any other legal
conclusion."); Brown, 612 F. Supp. 3d at 1345 (holding the expert
may "testify regarding the industry standards [and] whether
Defendants' procedures complied with industry standards," but
"may not specifically state that he believes that Defendants'
procedures are inadequate . . . ."); Brinkman v. Acct. Resol.
Servs., No. 8:20-CV-2453-VMC-AAS, 2021 WL 4340413, at *4 (M.D.
Fla. Sept. 23, 2021)(agreeing that expert could not testify as
to whether investigation was reasonable because it would be
impermissible legal conclusion"); Shipley v. Hunter Warfield,
Inc., No. 8:20-CV-2285-JSM-SPF, 2021 WL 5756618, at *6 (M.D. Fla.
Oct. 29, 2021)("Therefore, Hendricks may not testify as to
whether Hunter's investigation was reasonable or provide any
other legal conclusion."); Santos v. Experian Info. Sols., Inc.,
No. 19-23084-CIV, 2021 WL 6144643, at *5 (S.D. Fla. Nov. 30,
2021) ("He may not testify about whether Experian's existing
procedures or conduct were unreasonable, reckless, inadequate,
or offer any other legal conclusion."); see also Williams, 2015
WL 9690018, at *4("Mr. Hendricks is an expert called to testify
about prevailing industry standards and whether Defendant's

procedures comport with those norms. The standards aid the jury in its determination. Anything beyond this information is irrelevant."); Garcia v. Equifax Info. Servs., LLC, No. 8:22-CV-1987-WFJ-UAM, 2024 WL 1739505, at *2 (M.D. Fla. Apr. 23, 2024)("Mr. Ulzheimer accomplishes all these things without attempting to offer legal conclusions concerning "reasonableness" under the FCRA.").

The Court finds Kuehn's opinion as to policies and procedures relating to compliance with the FCRA is reliable. But she may not opine as to whether Defendant's procedures were ultimately reasonable or unreasonable.

### C. Helpfulness

The third prong asks "whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 593. Commonly referred to as the "helpfulness" inquiry, expert testimony can properly be applied and is helpful if it relates to any issue in the case and if it concerns matters that are beyond the understanding of an average lay person. Prosper v. Martin, 989 F.3d 1242, 1249 (11th Cir. 2021).

Kuehn's testimony can be helpful to the trier of fact. In Williams, 947 F.3d at 743, an expert witness testified as to the procedures used by the CRA in that case and compared it to the procedure used by other CRAs. Kuehn is proffered to essentially provide the same testimony. An average lay person does not know

the industry-standard procedures used by CRAs. Therefore, Kuehn's testimony could help the jury determine whether Defendant's procedures were reasonable and if any violation was willful.

### D. Rule 403

Kuehn satisfies all three prongs of Daubert and except for the exclusion of witness testimony as to "reasonableness" or "unreasonableness", the Court finds no undue prejudice from the anticipated testimony.

Accordingly, it is hereby

**ORDERED:**

Plaintiff's Motion to Exclude Opinion Evidence From Rebecca Kuehn (Doc. #83) is **GRANTED IN PART AND DENIED IN PART.** While Kuehn may testify to industry practices or standards, neither expert may testify that Milliman's procedures were unreasonable or reasonable.

**DONE and ORDERED** at Fort Myers, Florida, this __7th__ day of April, 2025.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record